UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MESTOUSIS ENTERPRISES INC.,                  :

               Plaintiff,              :              11 Civ. 3384 (JGK) (AJP)

         -against-               :              **REPORT AND RECOMMENDATION**

                                          :
CONCORD BLUE INC., CONCORD BLUE
ENERGY INC., CHRISTOPHER F.                   :
THANNHAEUSER & PRAYAS GOEL,
                                          :

               Defendants.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable John G. Koeltl, United States District Judge:**

       On November 14, 2011, Judge Koeltl entered a default judgment for plaintiff

Mestousis Enterprises Inc. against defendants Concord Blue Inc. ("CB"), Concord Blue Energy Inc.

("CBE"), Christopher F. Thannhaeuser and Prayas Goel, and referred the case to me for an inquest

on damages.  (Dkt. No. 19: Default Judgment; Dkt. No. 18: Order of Reference.)  Defendants have

not submitted any papers in connection with the inquest.

       For the reasons discussed below, the Court should enter judgment for Mestousis

against defendants in the amount of $29,342.59.

## FACTS[1/]

### The Complaint

The complaint (Dkt. No. 1) alleges as follows:

On or about September 17, 2009, Mestousis entered into a written agreement with CB for the purchase of a turn-key waste to energy system known as the "Reformer."  (Compl. ¶¶ 3, 4, 8.)  The purchase price was $5,180,000, with a down payment of $500,000, and covered the "'design', 'establishment', 'construction', 'manufacturing', 'delivery' and 'know-how' services required to erect the turn-key Reformer at the designed [sic] location of 1225 Oak Point Avenue" in the Bronx.  (Compl. ¶¶ 8-9.)

While "CB unequivocally represented that it was the owner of a patent-issued Reformer," CB only had filed a patent application in 2009 but had not been issued a patent.  (Compl. ¶ 10.)  CB represented that the Reformer was classified as "'renewable energy'" pursuant to the New York Renewable Portfolio Standard, but after the contract was signed, it became apparent that the Reformer would not qualify.  (Compl. ¶¶ 11-12.)  CB also represented that 1225 Oak Point Avenue was a suitable location for the Reformer, but Mestousis later learned that the property was not properly zoned for the Reformer.  (Compl. ¶¶ 13-14.)

In August 2010, Mestousis secured a new property at 1309 East Bay Avenue in the Bronx for $4,200,000.  (Compl. ¶ 15.)  While CB represented that it would provide engineering and

_____

[1/]   Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"  Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

technical services,  "CB has failed, refuses and/or is unable to deliver to Mestousis the engineering plans and actual scientific emissions data required to secure permits."  (Compl. ¶¶ 17-19.)  As a result, Mestousis was forced to hire consulting firms because CB was "unavailable or deficient." (Compl. ¶¶ 18, 20.)

On or about January 26, 2011, Mestousis notified CB of its "election to cancel and terminate" the agreement pursuant to section 10(b) of the contract Rider.  (Compl. ¶¶ 22-23.)  The contract required that on such cancellation CB refund the $500,000 deposit to Mestousis.  (Compl. ¶¶ 23-24.)  As of the filing of the complaint, CB had refunded $202,384.98 to Mestousis.  (Compl. ¶ 24.)

The complaint asserts claims for:  (1) breach of contract (Compl. ¶¶ 25-31), (2) fraud (Compl. ¶¶ 32-41), (3) fraudulent inducement (Compl. ¶¶ 42-45), (4) unjust enrichment (Compl. ¶¶ 46-50), (5) deceptive trade practices (Compl. ¶¶ 51-54), and (6) piercing the corporate veil (Compl. ¶¶ 55-59).   The complaint seeks, inter alia, compensatory, actual and consequential damages with interest, as well as attorneys' fees and costs.  (Compl. Wherefore Clause ¶¶ b-g.)

**Inquest Submissions**

In support of inquest damages, Mestousis filed a brief and supplemental affidavit outlining the expenses incurred and damages sought.  (Dkt. No. 23: Mestousis Br. & Peter Mestousis Aff.)[2]

---

[2]    This Court rejected Mestousis' first submission of only an attorney's affidavit, informing Mestousis that "an attorney's affidavit is not sufficient to establish the admissibility of the business document (e.g., Ex. F-G) or business facts."  (Dkt. No. 22: 12/2/11 Order.)  The Court also advised Mestousis to "address why these costs are compensable for breach of
(continued...)

Mestousis sought the liquidated amount of $297,615.02 (i.e., $500,000 less the $202,384.98 refunded to Mestousis), plus 9% interest per annum from September 2009 through November 17, 2011, for a total amount of $355,649.95.  (Mestousis Br. at 4; Peter Mestousis Aff. ¶ 5.)  On or about November 28, 2011, CB paid $300,000 to Mestousis, leaving a balance of $55,649.95, according to Mestousis.  (Mestousis Br. at 4; Peter Mestousis Aff. ¶ 8.)[3/]

Mestousis seeks consequential damages in the amount of $182,011 for the combined closing expenses for the purchase of 1225 Oak Point Avenue and 1309 East Bay Avenue.  (Mestousis Br. at 4-5; Peter Mestousis Aff. ¶¶ 9-12 & Ex. F: Real Property Records .)  Mestousis also seeks consequential damages for its out of pocket expenses to consultants in the amount of $328,893.28.  (Mestousis Br. at 5; Peter Mestousis Aff. ¶¶ 13-14 & Ex. G: Consultant Payment Records.)  Finally, Mestousis seeks attorneys' fees in the amount of $9,783 and costs of $557.  (Mestousis Br. at 6; Peter Mestousis Aff. ¶ 15 & Ex. H: Billing Records; Peter Mestousis Aff. Ex. I: Stmt. of Damages.)

Defendants did not submit any papers in opposition to the inquest, and the time to do so has passed.  (See Dkt. Nos. 20 & 22: 11/15/11 & 12/2/11 Orders.)

---

[2/]     (...continued)
          contract."  (12/2/11 Order.)

[3/]     The balance differs in the Mestousis Brief and Peter Mestousis Affidavit:  $55,649.95 and
          $53,417.85, respectively.  (Mestousis Br. at 4; Peter Mestousis Aff. ¶ 8.)

## ANALYSIS[4/]

### A.    Prejudgment Interest

        Mestousis elected to cancel the agreement on or about January 26, 2011 pursuant to section 10(b) of the contract Rider.  (See page 3 above; Dkt. No. 23: Peter Mestousis Aff. ¶ 7.)  The Rider provides:

> If for whatever reasons, or no reason, the Buyer is unable to secure all necessary permits, approvals, authorizations, licenses . . . , the Buyer reserves the absolute right to cancel this Agreement and Rider . . . .  In such event, the sum of $500,000.00 of the Deposit shall be returned forthwith to the Buyer, $200,000.00 from the Escrowee plus accrued interest and $300,000.00 from Seller.  Upon receipt of the $500,000.00 Deposit monies from Seller to Buyer, the parties shall be released of all obligations and responsibilities under the Agreement and Rider.

(Dkt. No. 16: Gabrielli Aff. Ex. E: Rider § 10(b); see also Rider § 9(e).)   On or about March 24, 2011, the escrowee released from escrow to Mestousis $200,000 plus accrued interest for a total of $202,384.98.  (See pages 3, 4 above; Peter Mestousis Aff. ¶ 7 & Ex. E: Escrow Records.)  On or about November 28, 2011, CB returned $300,000 to Mestousis.  (See page 4 above; Peter Mestousis Aff. ¶ 8.)  Mestousis seeks prejudgment interest for the late payment of the $300,000.

        Under New York law,[5/] prejudgment interest should be awarded in breach of contract cases.  C.P.L.R. § 5001(a) ("Interest shall be recovered upon a sum awarded because of a breach of

---

[4/]      The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'"   Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

[5/]      Section 14(e) of the Rider states, "This Agreement shall be governed by and construed in accordance with the laws of the State of New York."  (Rider § 14(e).)

performance of a contract . . . ."); see, e.g., NML Capital v. Republic of Arg., 621 F.3d 230, 239 (2d Cir. 2010); U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 78 (2d Cir. 2004); New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 606 (2d Cir. 2003); Adams v. Lindblad Travel, Inc., 730 F.2d 89, 93 (2d Cir. 1984) ("Under the law of New York, therefore, prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract."); Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co., 697 F.2d 481, 484-85 (2d Cir. 1983) ("The award of statutory pre-verdict interest under N.Y. [C.P.L.R. § 5001] is founded on the fact that the aggrieved party has been damage[d] by a loss of the use of money or its equivalent and that unless interest is added the party aggrieved is not made whole.   Statutory interest is compensation for the use of money.").[6]

The statutory interest rate in New York is 9%.  C.P.L.R. § 5004.  Pursuant to Rider § 10(b), the escrowee refunded the sum of $200,000 plus accrued interest (of $2,384.98) to Mestousis within a reasonable time after Mestousis elected to cancel the contract.  (See pages 3, 4 above.)  Thus, no interest is due on that amount.  CB did not refund the remaining $300,000 to Mestousis until November 28, 2011.  (See page 4 above.)  Mestousis therefore is entitled to 9% interest on $300,000 from January 26, 2011 when it cancelled the contract until November 28, 2011 when the $300,000 was repaid.  Mestousis should be awarded prejudgment interest of $22,635.59.[7]

---

[6]     See also, e.g., Hounddog Prods., L.L.C. v. Empire Film Group, Inc., 09 Civ. 9698, 2011 WL 5519829 at *7 (S.D.N.Y. Nov. 10, 2011); Silge v. Merz, 05 Civ. 3648, 2005 WL 2387482 at *2 (S.D.N.Y. Sept. 29, 2005) (Peck, M.J.), report & rec. adopted, 2006 WL 39632 (S.D.N.Y. Jan. 6, 2006), aff'd, 510 F.3d 157 (2d Cir. 2007).

[7]     Interest of 9% annually is 0.0246575% per day.  From January 26, 2011 until November 28, (continued...)

### B. Consequential Damages

Mestousis seeks damages of $182,011 for the combined closing expenses of both site locations (see pages 3, 4 above; Dkt. No. 23: Peter Mestousis Aff. ¶ 12 & Ex. F: Real Property Records) and $328,893.28 in consulting fees (see pages 3, 4 above; Peter Mestousis Aff. ¶ 14 & Ex. G: Consulting Records).

Generally under New York law, the nonbreaching party may recover "'general,' consequential contract damages which are the natural and probable consequence of the breach." Reads Co. v. Katz, 72 A.D.3d 1054, 1056, 900 N.Y.S.2d 131, 133-34 (2d Dep't 2010).[8] To collect "'special' or extraordinary [consequential] damages that do not flow directly from the breach, however, a plaintiff is required to [show] that the damages were foreseeable and within the contemplation of the parties at the time the contract was made." Reads Co. v. Katz, 72 A.D.3d at 1056, 900 N.Y.S.2d at 134.[9]

Where a contract provides a particular remedy, the parties are limited to the remedy provided for in the contract. See, e.g., Andy Warhol Found. for the Visual Arts, Inc., v Barth & Dreyfuss, 04 Civ. 9991, 2006 WL 752766 at *2, *4 (S.D.N.Y. Jan. 6, 2006) (denying consequential damages where upon default, contract provided for termination of the contract and immediate

---

[7] (...continued)
2011 is 306 days.  Interest therefore is 7.545195% of $300,000, or $22,635.59.

[8] See, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co., 618 F. Supp. 2d 280, 292 (S.D.N.Y. 2009); Command Cinema Corp., v. VCA Labs, Inc., 464 F. Supp. 2d 191, 200 (S.D.N.Y. 2006).

[9] See, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co., 618 F. Supp. 2d at 292; Command Cinema Corp., v. VCA Labs, Inc., 464 F. Supp. 2d at 200.

payment of remaining royalty payments), <u>report & rec. adopted</u>, 2006 WL 779170 (S.D.N.Y.

Mar. 23, 2006); <u>325 Schermerhorn, LLC</u> v. <u>Nevins Realty Corp.</u>, No. 16365/08, 2009 WL 997501

at *10 (Sup. Ct. Kings Co. Apr. 14, 2009) (denying consequential damages where "[t]he contracts

provide for the return of the down payments . . . . [and] do not provide for an award of the

'development costs' or other consequential damages"), <u>aff'd</u>, 76 A.D.3d 625, 906 N.Y.S. 2d 339 (2d

Dep't 2010); <u>Atlas Realty of East Meadow, Inc.</u> v. <u>Ostrofsky</u>, 56 Misc.2d 787, 789, 289 N.Y.S.2d

784, 789 (Sup. Ct. Nassau Co. 1967) (denying attorneys' fees where "[t]he contract provides for the

return of the down payment . . . . [and] does not provide for the recovery of counsel fees").

 The Rider specifically provided that if Mestousis was not able to obtain "all necessary

permits, approvals, authorizations, licenses and the like for the lawful use and occupancy of the

waste energy management plant," Mestousis could cancel the Agreement and obtain a refund of its

$500,000 downpayment.  (<u>See</u> page 5 above; Dkt. No. 16: Gabrielli Aff. Ex. E: Rider § 10(b).)

Mestousis chose to do just that, and thus it has elected its remedy and cannot recover

"consequential" damages for consultants or closing costs.[10/]

 Because Mestousis elected to cancel the contract pursuant to Rider section 10(b), has

failed to prove that any consequential damages it seeks were foreseeable and within the

contemplation of the parties when the contract was formed, and in any event has not provided

---

[10/] Moreover, Mestousis simply lists a number of services and consultants, and the receipts fail to detail the services provided. (Mestousis Br. at 5; Peter Mestousis Aff. ¶¶ 9-14 & Ex. G: Consulting Records.)  Mestousis has not provided sufficient evidence as to what the consultants did or why it was necessary in order to establish that these costs were a foreseeable and probable result of the breach.

admissible evidence as to what the consultants did, Mestousis should not be awarded consequential damages for the closing fees or consulting fees.

**C.    Attorneys' Fees and Costs**

Mestousis seeks attorneys' fees in the amount of $9,783 and costs of $557.  (Dkt. No. 23: Mestousis Br. at 6; Dkt. No. 23: Peter Mestousis Aff. ¶ 15 & Ex. H: Atty. Invoices; Peter Mestousis Aff. Ex. I: Stmt. of Damages.)

Mestousis does not provide any explanation of why it should be entitled to attorneys' fees.  (See Mestousis Br. at 6.)  Unless a contract provides for attorneys' fees, the "American rule" is that attorneys' fees are not available in breach of contract actions.  See, e.g., Summit Valley Indus., Inc. v. United Bhd. Of Carpenters & Joiners, 456 U.S. 717, 721, 102 S. Ct. 2112, 2114 (1982); E*Trade Fin. Corp. v. Deutsche Bank AG, 374 F. App'x 119, 123 (2d Cir. 2010); U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004).

The only reference to attorneys' fees in the Rider is in the event CB breaches any of its representations or warranties, one of which is that it has a valid patent.  (Dkt. No. 16: Gabrielli Aff. Ex. E: Rider § 9.)[11/]  Since Mestousis asserts that CB did not have a valid patent (see page 2

---

[11/]    Rider § 9 provides:

> 9.  Seller's Representations.    Seller hereby represents and warrants to Buyer as follows:
>
> . . .
> (b)    The Seller is the owner of a valid patent for Concord Blue System . . . .
>
> . . .
>      Seller agrees that the representations and warranties set forth in the Agreement and Rider shall be true . . . .  Seller hereby indemnifies Buyer and
>                                                                    (continued...)

above), giving Mestousis the benefit of the doubt, it can recover reasonable attorneys' fees for this action.

Mestousis' request of attorneys' fees is supported by computerized billing records. (Peter Mestousis Aff. Ex. H: Billing Records.)  Those invoices total only $9,150 (excluding costs). (See Peter Mestousis Aff. Ex. H: Billing Records.)  The Court finds counsel's hourly rate of $300 per hour to be reasonable, but some of the time spent to be excessive.  For court conferences on July 18, 2011, August 3, 2011, October 5, 2011, and November 10, 2011, attorney Michael J. Gabrielli billed $1,200 (i.e., 4 hours at $300 per hour) for travel to and from and attendance at each pretrial conference, for a total of $4,800.  (See Peter Mestousis Aff. Ex. H: Billing Records.)  In this Circuit, it is the common practice to compensate travel at half the attorney's hourly rate.  See, e.g., Moreno v. Empire City Subway Co., 05 Civ. 7768, 2008 WL 793605 at *5 (S.D.N.Y. Mar. 26, 2008); Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 373 (S.D.N.Y. 2005).  The Court finds this amount to be excessive and reduces the fee to $450 for each of the four conferences, for a total of $1,800, thereby reducing the attorneys' fees by $3,000, for a total of $6,150.[12]

"'[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" LeBlanc-Sternberg v. Fletcher, 143 F.3d 748,

---

[11]    (...continued)

          holds Buyer harmless from and against any liability, cost and expense, including reasonable attorney's fees, in the event of any breach of the representations contained in this Agreement.

[12]    The Court's calculation allows the following for each pretrial conference: two hours for travel between counsel's office in the Bronx and the courthouse at $150 per hour (half the hourly rate) plus half an hour for the conference at counsel's regular rate.

763 (2d Cir. 1998); see, e.g., DeCurtis v. Upward Bound Int'l, Inc., 09 Civ. 5378, 2011 WL 4549412 at *9 (S.D.N.Y. Sept. 27, 2011); Hirsch v. Sweet N Sour Corp., 10 Civ. 5605, 2011 WL 3741008 at *9 (S.D.N.Y. Aug. 25, 2011).  Expenses must be substantiated for reimbursement. See, e.g., Cover v. Potter, 05 Civ. 7039, 2008 WL 4093043 at *8 (S.D.N.Y. Aug. 29, 2008); James v. Nat'l R.R. Passenger Corp., 02 Civ. 3915, 2005 WL 6182322 at *20 (S.D.N.Y. Mar. 30, 2005).  Mestousis' costs were substantiated by receipts, and thus Mestousis should be awarded the $557 in costs.

## CONCLUSION

For the reasons stated above, the Court should award judgment to Mestousis against defendants jointly and severally[13] for the following:

| | | |
|---|---|---|
| Prejudgment Interest | | $22,635.59 |
| Attorney's Fees | | 6,150.00 |
| Costs | | 557.00 |
| | Total | $29,342.59 |

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable

---

[13]    Because the complaint seeks for the Court to pierce the corporate veil "[t]o the extent that a corporate shell separates the Defendants, Christopher F. Thannhaeuser, and Prayas Goel, from the Defendant corporations, Concord Blue Inc. and Concord Blue Energy Inc." (Dkt. No. 1: Compl. ¶¶ 55-59), and liability is established by the default, judgment should be joint and several against all defendants.

John G. Koeltl, 500 Pearl Street, Room 1030, and to my chambers, 500 Pearl Street, Room 1370.

Any requests for an extension of time for filing objections must be directed to Judge Koeltl (with a courtesy copy to my chambers).   Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**Plaintiff is to serve this Report and Recommendation on defendants and file an affidavit of service with the Clerk of Court.**

Dated:       New York, New York
             January 27, 2012

                                                      Respectfully submitted,

                                                      Andrew J. Peck
                                                      United States Magistrate Judge

Copies **by ECF** to:   Michael Joseph Gabrielli, Esq.
                        Judge John G. Koeltl

G:\OPIN\MESTOUSISvCONCORD